**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**CURTIS JOHNSON,**

                    **Plaintiff,**

**VS.**                                        **NO.   4:12-CV-793 JMM**

**TOM VILSACK, SECRETARY,**
**DEPARTMENT OF AGRICULTURE, et al.**
                    **Defendants.**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Comes now Plaintiff, Curtis Johnson, by and through his attorneys, **WILSON &**
**ASSOCIATES, P.A.,** and provides the following Memorandum in Support of Plaintiff's
Response to Defendants' Motion for Summary Judgment.

**I.**

**INTRODUCTION**

On December 21, 2012, Plaintiff filed his Complaint against Defendants Tom
Vilsack, Secretary of United States Department of Agriculture (USDA), Gary Cochran,
Hendra Woodfork, Shirley Moore, Dotson Collins, James G. Culpepper III, Dianna Shook,
Linda Newkirk, Dennis Stephens, Linda Baker, Thomas Brown and M. Terry Johnson
(Defendants).  In his Complaint, Plaintiff alleges that USDA and Defendants violated his
federal constitutional and statutory rights by engaging in racial discrimination and
retaliatory conduct in regard to primary loan servicing, debt settlement options and his debt
settlement applications as well as taking his property through unlawful administrative
offsets and other means.  Furthermore, Plaintiff states, as a result of USDA and Defendants
unlawful conduct and violation of his federal constitutional and statutory rights, he

1

suffered personal injury and injury to and loss of his property, loss of income, loss of creditworthiness and loss of his farm enterprise.  In addition, Plaintiff has suffered emotional distress, mental anguish, embarrassment, humiliation and inconvenience. Consequently, Plaintiff is seeking judgment for compensatory damages, actual damages, consequential and incidental damages as well as punitive damages.  Also, Plaintiff prays for declaratory and injunctive relief as well as attorney's fees and costs.

Moreover, this Court's earlier dismissal of Plaintiff's Complaint (Docket No. 74 March 16, 2015), which was reversed and remanded by the Eighth Circuit Court of Appeals in Johnson v. Department of Agriculture, et al., No. 15-1796 (August 18, 2016), dismissed Plaintiff's claims against Defendants Dotson Collins and Diana Shook and the ECOA claims against Defendants Thomas Brown and M. Terry Johnson as well as the individual claim against Tom Vilsack.  Consequently, the appropriate Defendants remaining in Plaintiff's cause of action are the United States Department of Agriculture Secretary Tom Vilsack, or his successor, in his official capacity (USDA), Gary Cochran, Hendra Woodfork, Shirley Moore, James Culpepper III, Linda Newkirk, Dennis Stephens, Linda Baker, Thomas Brown and M. Terry Johnson (Defendants).

## II.

## LAW AND ARGUMENT

### A.    CLAIMS AGAINST DEFENDANT CULPEPPER ARE SUPPORTED BY FACTS AND LAW.

USDA and Defendants contend that Defendant James Culpepper, Farm Loan Chief, should be dismissed from this cause of action.  However, Plaintiff submits that such contention is erroneous as stated herein.

The evidence in this matter shows that Culpepper provided guidance and direction to Defendant Linda Newkirk in regard to the decisions she made as State Executive Director in this case and in general.   Newkirk further indicated that she considered Culpepper to be an "expert" on policies and procedure within USDA/FSA.  (See Linda Newkirk's Deposition, pp. 21-28, attached as Exhibit 7).   Furthermore, Gary Cochran testified in his deposition that Culpepper transferred Plaintiff's loan file from Monroe County (which was outside Cochran's jurisdiction) to him as Farm Loan Manager in Cross County for handling in 1999 or 2000.   (See Gary Cochran's Deposition, pp. 36-37, attached as Exhibit 3).   Moreover, Culpepper sent correspondence to the Farm Loan Manager, Shirley Moore, in the Cross County FSA office in regard to the inconsistencies found in Plaintiff's loan servicing file.  (See Memorandum From James Culpepper to Shirley Moore dated March 25, 2009, attached as Exhibit 8).  Finally, the record reveals that James Culpepper, as Farm Loan Chief, was directly involved in rejecting Plaintiff's Debt Settlement Application in October, 2009 as a member of USDA/FSA's State Settlement Review Committee.  (See Debt Settlement or Release of Liability Checklist, signed on October 14, 2009 by James G. Culpepper, Farm Loan Chief along with Larry Moore, Acting State Executive Director and Dennis Stephens, Farm Loan Specialist, attached as Exhibit 9).

Consequently, Plaintiff submits that the facts and law support his claims against Defendant James Culpepper, jointly and severally, as revealed in the above paragraph.

**B.     PLAINTIFF'S   ECOA   CLAIMS   AGAINST   USDA   AND DEFENDANTS ARE VIABLE AND SUPPORTED BY LAW AND FACTS.**

In addition, USDA and Defendants argue that Plaintiff's ECOA claims are barred by the prior two-year statute of limitations. They further argue that Plaintiff cannot establish a prima facie case of racial discrimination or retaliation under the ECOA with respect to his Debt Settlement Applications and that, even assuming Plaintiff has established a prima facie case of racial discrimination and/or retaliation, they have legitimate, non-discriminatory or non-retaliatory reasons for all actions taken. For the reasons stated below, Plaintiff states that these arguments are untenable.

First, Plaintiff will address USDA and Defendants' proposition that his ECOA claims are barred by the prior two-year statute of limitations. They acknowledge that under the Dodd-Frank Act, on July 21, 2010, Congress extended the statute of limitations period for ECOA claims from two years to five years. In addition, USDA's Final Agency Decision (FAD) declared that this extension applied to Plaintiff's claim of discrimination for prior acts committed by USDA and Defendants before Dodd-Frank was passed. (See Docket No. 54, p. 33). Furthermore, USDA alleged as an affirmative defense the five-year statute of limitations under Dodd-Frank. (See Docket No. 87, p. 2). However, USDA and Defendants seek to limit the effectiveness and scope of Dodd-Frank by claiming that the five-year statute of limitations is prospective and not retroactive. Such claim would defeat the purpose of the extension of the statute of limitations beyond two-years to address prior wrongful acts that caused American citizens to lose billions of dollars and suffer great economic hardship.

Furthermore, even assuming that there was a two-year statute of limitations, which Plaintiff vehemently deny the acts committed by USDA, through its Defendant employees and Defendants individually occurred within the two-year period and before expiration and

after the five-year extension mandated in Dodd-Frank.  The record shows that Defendant Linda Newkirk's decisions to deny Plaintiff's debt settlement applications occurred in December, 2009, prior to the expiration of the two-year statute of limitations and within the passage of Dodd-Frank that extended the statute of limitations to five years on July 21, 2010.   In addition, USDA's National Appeals Division (NAD) Deputy Director M. Terry Johnson's decision to uphold Newkirk's decisions occurred on August 12, 2010, after the passage of Dodd-Frank on July 21, 2010.  Therefore it is clear that the applicable statute of limitations period in the case at bar is the five-year period provided in Dodd-Frank.

Additionally, USDA and Defendants engaged in a "continuing violation" of Plaintiff's rights pursuant to the ECOA from April, 2001 to November, 2010 by engaging in a series of delays, silences and misleading communications which required Plaintiff and his ex-wife to submit four separate Debt Settlement Applications each between 2003 and 2009 consisting of policy violations and other wrongful acts as USDA's Final Agency Decision (FAD) from the Office of the Assistant Secretary for Civil Rights found in its February 29, 2012 decision rendered by Dr. Joe Leonard, Jr., Assistant Secretary for Civil Rights.  They further violated their own regulations by not properly ascertaining the value of property used as security or discussing an acceptable offer with Plaintiff.  (See Docket No. 54, p. 47, paragraph 3).   USDA and Defendants developed a "90-day rule" that financial information required for debt settlement must be current within 90 days which was a "general rule of thumb" that was neither in 7 C.F.R. §1956 nor RD Instructions 1956-B.  (See Docket No. 54, p. 46).

Consequently, Plaintiff avers that this conduct by USDA and Defendants' shows a "systemic" discriminatory and retaliatory structure within the Farm Service Agency offices

which violated Plaintiff's rights under the ECOA.  Therefore, Plaintiff submits that USDA and Defendants engaged in a "continuing violation" of his rights from July, 2001 to until at least August 12, 2010 and possibly to November, 2010.  See <u>Ross v. Buckeye Cellulose Corp.</u> 980 F.2 648 (11th Cir. 1993) and <u>Hargraves v.Capital City Mortgage Corp.,</u> 140 F. Supp.2d 7 (D.D.C. 2000).

Now, turning to USDA and Defendants' argument that Plaintiff cannot establish a prima facie case of racial discrimination or retaliation against them, Plaintiff avers that the evidence in this matter does establish a prima facie case of racial discrimination and retaliation and that their alleged legitimate non-discriminatory and non-retaliatory reasons are not legitimate and are a pretext to cover up their racially discriminatory acts and retaliatory conduct against him.

Specifically, USDA and Defendants proclaim that the "third prong" of the <u>McDonnell Douglas</u> analysis cannot be established by Plaintiff because he failed to provide a debt settlement application that qualified for debt settlement.  However, this proclamation is without merit.  Initially, the evidence shows that Plaintiff submitted debt settlement applications along with his ex-wife that according to Cheryl Brooks, Farm Loan Officer in the Cross County FSA office offered an adequate payment amount ($15,500.00) under USDA regulations and RD Instructions and they had every thing to complete processing of Plaintiff's debt settlement application in 2004.   (See Cheryl Brooks' Affidavit, attached as Exhibit 4, p. 3).  Moreover, the requested updated information needed by Defendants in 2004 could have been obtained by Defendants through releases signed by Plaintiff and his ex-wife and a completed 1956-10 checklist. Further, Defendants were responsible for obtaining all other forms needed for the 1956-10 checklist (credit

report, current/past debt inquiry, etc.)  (See Cheryl Brooks' Affidavit, attached as Exhibit 4, p. 5).  Finally, Cheryl Brooks states:  "It appears as though the application could have been processed to completion in 2004, when the applicant's offer met the requirements of FSA to be equal to the value of security (lots in Brinkley).   It is possible, though not definite, that the offer of $15,500 would have been accepted, getting the Johnsons off of the books and making all of the continued back-and-forth unnecessary."  (See Cheryl Brooks' Affidavit, attached Exhibit 4, p. 6).  It should be noted that the market value appraisal obtained by Defendants in January, 2004 was $13,700.00 for the six (6) lots that secured the loans Plaintiff obtained from USDA.  (See Defendants' Exhibit 23 to their Motion for Summary Judgment, Docket No. 99, p. 23).

Furthermore, USDA and Defendants' claim that although Plaintiff's settlement offer was at least the market value of the security, they determined that Plaintiff was able to pay more over a period of time and therefore they were entitled to get more through administrative offsets.  However, the problem with this position is that Plaintiff states that Defendant Gary Cochran had agreed to accept his offer of $15,500.00 in a meeting on October 21, 2003 which included Dr. Calvin King at the Arkansas Land and Farm Development office.  (See Letter to Gary Cochran from Plaintiff Curtis Johnson dated 02-19-04, attached as Exhibit 10).  Also, there is no proof that Defendants discussed any counter-offers with Plaintiff during this entire process and opted to continue to take his money through administrative offsets.

Interestingly, even though Defendants contend that Plaintiff's debt settlement application in 2009 did not qualify for debt settlement, the evidence shows that the denial of his 2009 debt settlement application was in violation of USDA regulations and RD

Instructions.  Specifically, Dennis Stephens testified at his deposition that a market value appraisal, which USDA and Defendants failed to obtain, was required under USDA regulation, 7 C.F.R. § 1956.66(a)(3)(ii), before completing the processing and rejecting of Plaintiff's debt settlement application he submitted on September 22, 2009.  (See Dennis Stephens' Deposition, pp. 125-128, attached as Exhibit 11) (Also, see USDA Regulations and RD Instructions, attached as Exhibit 12, consisting of six (6) pages).   Further, as discussed earlier, Defendants concocted a so-called "90 day rule" in regard to financial information being current which was not authorized under 7 C.F.R. § 1956 or RD Instruction 1956-B.

Therefore, it is clear that USDA and Defendants' alleged legitimate non-discriminatory reasons are merely a pretext to hide racial discrimination and retaliation in regard to his loan servicing and debt settlement applications.  This is further revealed in the fact that a review of the debt settlement files of the eight (8) Anglo-American (Caucasian) debt settlement applicants shows that Defendants did not send a Notice of Intent to Collect by Administrative Offsets to any of the said applicants. (See Debt Settlement Files of Anglo-American Applicants, attached as Exhibit 1, consisting of 333 pages). This is crucial evidence that Anglo-American applicants were treated more favorably than Plaintiff in regard to the debt settlement process and debt settlement applications.

Even more troubling and revealing evidence in regard to Defendants' discriminatory conduct and racial attitude comes from Gary Cochran's deposition testimony wherein he refers to an African-American farmer/borrower as "boy" when naming the only other farmer/borrower (other than Plaintiff) whose loan file was transferred to him from another FSA District. (See Gary Cochran's Deposition, pp. 53-56,

attached as Exhibit 3). Furthermore, Cochran began a "systematic" structure of administrative offsets and delay tactics in regard to Plaintiff's debt settlement applications" in July 2001 designed to extract as much money as possible from Plaintiff due to his race and his participation in the "Pigford Litigation". (See USDA Report of Program Investigation prepared by Mr. James Westbrooks, Program Investigator, attached as Exhibit 13, consisting of 22 pages, pp. 3 and 9). (Also, See Plaintiff's Deposition, attached as Exhibit 2, pp. 158-183).

Finally, as stated earlier, the USDA's FAD found that USDA and Defendants discriminated against Plaintiff in regard to his debt settlement applications because of his race. This finding was adopted by this Court in its Order of March 16, 2015. (See Docket No. 74, p. 7).

In regard to the ECOA retaliation claim against USDA and Defendants, Plaintiff submits that he is entitled to relief pursuant to 15 U.S.C. § 1691(a)(3) which states in part: "It is unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction … because the applicant has in good faith exercised any right under this chapter." Plaintiff suggests that this language establishes a claim for retaliation under the ECOA. Moreover, it is clear that Plaintiff was a member of the "Pigford Litigation" and he was denied approval of his debt settlement application by USDA and Defendants. Furthermore, the proof shows that USDA and Defendants were aware of Plaintiff's participation in the "Pigford Litigation" and that he was awarded $50,000.00 by an adjudicator on September 22, 1999. (See Defendants' Exhibit 6, Docket No. 99). Moreover, Gary Cochran stated in his deposition testimony that he was aware of Plaintiff's involvement in the "Pigford Litigation" and testified at a hearing in Washington D.C. in

regard to the claims of African-American farmers/borrowers. In addition, it caused him a lot of work.  (See Gary Cochran's Deposition, pp. 62-132, attached as Exhibit 3).

Therefore, Plaintiff avers that USDA and Defendants engaged in retaliatory acts against him commencing in July, 2001 and continuing until at least August, 2010. Additionally, as stated earlier, Defendants continued to discriminate and retaliate against Plaintiff when Shirley Moore allegedly sent him a letter concerning an appraisal she obtained in November, 2010.  (See Defendants' Exhibit 59, Docket No. 99-59).

### C.  PLAINTIFF'S BIVENS CLAIM AGAINST DEFENDANTS IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

USDA and Defendants state that Plaintiff's Bivens claim is barred by the three-year statute of limitations for tort actions under Arkansas state law.  Plaintiff submits that this statement is untenable for the reasons stated herein.

Initially, Plaintiff notes that Defendants failed to allege the statute of limitations as to his Bivens claim in their Answer as an "affirmative defense".  (See Docket No. 88, pp. 1-16).   They, also, failed to raise the statute of limitation defense in their Motion to Dismiss filed on June 17, 2014.  (See Docket No.53, pp. 1-5).  This failure is fatal to their attempt to raise such defense in their Motion for Summary Judgment in that such failure constitutes a waiver of said "affirmative defense".  Rule 8(c) of the Federal Rules of Civil Procedure, provides in part: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense including … statute of limitations.  The Eighth Circuit has indicated a failure to plead the statute of limitations amounts to a "waiver" of said defense.  See Zotos v. Lindbergh School District, 121 F.3d 356 (8th Cir. 1997).

In addition, as stated earlier, the last wrongful act in violation of Plaintiff's due process rights under the Fifth Amendment to the U.S. Constitution occurred when M.

Terry Johnson upheld the denial of Plaintiff's debt settlement application by Linda Newkirk on August 12, 2010.  Also, as indicated in Plaintiff's Response to Defendants Statement of Undisputed Facts, Response No. 97, the record reflects that the last act of discrimination according the USDA's FAD was December 22, 2009 and Defendants' Exhibits 55-56 show a date of December 22, 2009.

### D.      PLAINTIFF'S BIVENS CLAIM IS NOT PRECLUDED BY HIS FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Plaintiff's Bivens claim is not precluded by the failure to exhaust administrative remedies as alleged by Defendants.  As will be discussed further below, the Due Process Clause of Fifth Amendment guarantees Plaintiff a right not to be deprived of his "property" without due process of law as well as being afforded equal protection under the law.  The property interests that Plaintiff has in the case at bar include his salary, pension and income tax refunds as well his debt settlement applications and debt repayment rights.

Defendants contend that Plaintiff has waived his Bivens claim because of his alleged failure to exhaust administrative remedies.  However, Plaintiff states that Defendants waived this "affirmative defense by failing to allege such defense in their Answer.  (See Docket No. 88, pp. 1-16).  Again, this failure prevents such argument to go forward in a motion for summary judgment especially at such a late date in the proceedings.  Moreover, Defendants had ample opportunity to present the exhaustion defense when they filed their Motion to Dismiss on June 17, 2014 and failed to do so.  (See Docket No. 53, pp. 1-5).

More importantly, the federal appellate courts have found that failure to plead an affirmative defense in an Answer or other pleading constitutes a waiver of such defense.

11

In <u>The Musicland Group, Inc. v. Sayre</u>, 850 F.2d 350 (8th Cir. 1988), the Eighth Circuit Court of Appeals declared that failure to plead an affirmative defense results in a waiver of that defense and its exclusion from the case. (Also, see, <u>Camalier & Buckley-Madison, Inc., v. Madison Hotel</u>, 513 F.2d 407 (D.C. Cir. 1975). The Court further found that non-enumerated affirmative defenses such as the "exhaustion of administrative remedies" defense are regarded as such under the catchall clause "an any other matter constituting an avoidance or affirmative defense" found under Rule 8(c) of the Federal Rules of Civil Procedure. See <u>id</u>. at 353.

Furthermore, as Defendants acknowledge, the so-called exhaustion of administrative remedies defense is one that have a number of exceptions to this general rule. Plaintiff submits that he has a "legitimate constitutional claim" against Defendants for violation of his due process of law rights under the Fifth Amendment. In addition, Plaintiff believes that an appeal to the USDA's National Appeals Division would have been futile given the fact that this sub-agency denied his appeal in regard to the USDA and Defendants' denial of his debt settlement application in August, 2010.

Consequently, it clear that the exhaustion of administrative remedies defense is not applicable to the case at bar and should be disregarded.

### E. PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE AGAINST DEFENDANTS UNDER BIVENS.

Defendants propose that Plaintiff cannot establish a prima facie case for his Bivens claim that they violated his due process rights in regard to his property. This proposition is without merit as shown below.

12

Plaintiff's property interest in regard to his salary, pension and income tax refund is protected under the Due Process Clause of the Fifth Amendment contrary to Defendants' statements in their Brief. Defendants' inability to cite any federal appellate case to the contrary is evident that there argument in regard to this "inalienable right" is baseless.

Furthermore, it is clear that Defendants deprived Plaintiff of his property without due process of law in regard to his administrative offsets and his debt applications. Defendants claim that Plaintiff was afforded due process under the Debt Collection Improvement Act.  However, there is evidence that in the case at bar that Defendants did not give Plaintiff an "opportunity to dispute the debt or make arrangements to pay it" as contemplated under the Debt Collection Act as cited in Defendants' Brief, Docket No. 101, p. 30.    The record reflects that from the beginning of the collection process in regard to Plaintiff's delinquent debt, USDA and Defendants initiated collection by administrative offsets on July 11, 2001 when they sent the Notice of Intent to Collect by Administrative Offset which was the same date the initial Notice of the Availability of Loan Servicing and Debt Settlement Programs for Delinquent Farm Borrowers was mailed to Plaintiff.  (See Defendants' Exhibits 7-8, Docket Nos. 99-7 and 99-8).  Further, USDA and Defendants failed to allow Plaintiff to make arrangements to pay his debt through a series of delays and violations of USDA's regulations and RD Instructions as discussed in earlier sections above.  Therefore, it is quite evident that Plaintiff was not afforded due process in regard to the taking of his property in this matter.


### F.  DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY UNDER BIVENS.

Defendants seek to avoid responsibility for their wrongful acts against Plaintiff in

regard to his property rights under the Due Process Clause of the Fifth Amendment and his federal statutory rights pursuant to the ECOA by claiming "qualified immunity" in this case. This avoidance tactic is not appropriate as will be discussed herein.

Initially, Defendants argue that they are entitled to qualified immunity because Plaintiff has not established that he has a constitutional right that should have been protected under the Due Process Clause. As stated above, this argument is baseless and cannot withstand scrutiny under the law and facts in this cause of action. Defendants opined that the Debt Collection Improvement Act abolishes Plaintiff's constitutional due process right concerning his property because said Act provides for administrative offsets in regard to Plaintiff's property. This position is not supported by a reading of the Act or case law and is incredulous. Again, Defendants failed to provide due process to Plaintiff when they sent out a Notice of Intent to Collect by Administrative Offset without given him the opportunity to dispute the debt. This violation by Defendants is even more egregious when you consider the fact that Defendants did not send a Notice of Intent to Collect by Administrative Offset to any of the eight (8) Anglo-American applicants as discussed in an earlier section. They further violated his due process right when they concocted a "90 day Rule" which was not authorized under the USDA regulations or RD Instructions or by a federal statute. It is without question that this "Rule" resulted in constant delays and obstructions in regard to Plaintiff's debt settlement applications and, therefore, facilitated Defendants' initial plan to engage in the unlawful taking of his money through administrative offsets. Furthermore, Defendants violated the USDA's regulation, as addressed earlier, when they failed to obtain a market value appraisal before completing and rejecting Plaintiff's debt settlement application in December, 2009. As Shirley Moore

testified to in her deposition they had "goals" to make. (See Shirley Moore's Deposition, pp. 38-42, attached as Exhibit 14). Clearly, these Defendants had gone "Rogue" in regard to Plaintiff's constitutional and federal statutory rights.

Defendants further contend that Plaintiff's rights under the Due Process Clause and the ECOA were not clearly established to the extent they would have known that they were violating his rights when they initiated wrongful administrative offsets and engaged in delays and obstruction as well as policy and regulatory violations within USDA. This contention is untenable and cannot be allowed to stand.

As stated in Childress v. Small Business Administration, 825 F.2d 1550 (11th Cir. 1987), where the basis for the cause of action is provided in the statute or regulation sued upon then the right violated is clearly established and qualified immunity is not allowed. Contrary to Defendants' position that Plaintiff's cause of action is not based on a statute or regulation which is the basis of this lawsuit, Plaintiff suggests otherwise. First, ECOA clearly prohibits discrimination in regard to the processing of credit transactions on the basis of race and retaliation. Further, the 11th Circuit Court appeals opined that defendants therein might be held liable "if their actions had violated the minimum constitutional requirements of due process as clearly established at the time of their actions." See id. at 1553. Such is the case at bar in regard to Defendants' action denying Plaintiff his rights under the ECOA and the Due Process Clause of the Fifth Amendment. Plaintiff has brought this cause of action pursuant to the ECOA as well as the Due Process Clause against USDA and Defendants for the injuries and damages they caused him to suffer. Moreover, under the USDA regulation, 7 C.F.R. § 15(d), Plaintiff had the right to file a complaint of racial discrimination with the Office of the Assistant Secretary for Civil

Rights which he did on August 27, 2010. His complaint was investigated and USDA/FSA and Defendants were found to have discriminated against Plaintiff in regard to his loan servicing and debt settlement application on the basis of race in a FAD issued on February 29, 2012. Consequently, it is clear that USDA and Defendants violated Plaintiff's clearly established right not to be discriminated against on the basis of race in regard to his credit transactions (debt settlement applications), including the wrongful administrative offsets which they initiated in July, 2001 and continued until 2010. Moreover, the ECOA clearly defines a credit transaction to include "collection procedures" which administrative offsets are. (See 15 U.S.C. § 1691.202.2(m)).

Therefore, Defendants are not entitled to qualified immunity in the case at bar and certainly did not have unfettered discretion to deny Plaintiff his right not to be discriminated against because of his race or previous protected activity under the ECOA or to violate his due process rights in regard to his property under the Fifth Amendment.


## CONCLUSION

Wherefore, in view of the foregoing facts, law and argument, Plaintiff respectfully requests that USDA and Defendants' motion for summary judgment be denied and for all other proper and just relief.

Respectfully submitted,

**CURTIS JOHNSON,** Plaintiff


WILSON & ASSOCIATES, P.A.
ATTORNEYS AT LAW
P O BOX 1299
WEST MEMPHIS, AR 72303

(870) 735-2940
E-mail:  esquirewilson@yahoo.com


By:     /s/Ronald C. Wilson
         Attorney for Plaintiff
         Ark. Bar No. 84163




## CERTIFICATE OF SERVICE

I, Ronald C. Wilson, attorney for Plaintiff, certify that a copy of the above and foregoing pleading has been filed electronically with the ECF System for the United States District Court for the Eastern District of Arkansas, which has caused electronic notification of this filing to be sent to all counsel of record on this 29th day of June, 2017, including, Jane W. Duke, Mary Catherine Way, Nathan Andrew Read and Richard M. Pence, Jr.

/s/ Ronald C. Wilson
Attorney at Law

17